UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                       :

PARMINDER SINGH WALIA,        :
                       :

             Plaintiff,  :

                       :

          v.         :

                       :

THE VERITAS HEALTHCARE SOLUTIONS, :
L.L.C., *et al.*,           :

                       :

            Defendants. :

                       :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>August 11, 2015</u>

13 Civ. 6935 (KPF)

<u>OPINION AND ORDER</u>

KATHERINE POLK FAILLA, District Judge:

     Plaintiff Parminder Singh Walia ("Plaintiff" or "Walia") brings this action *pro se* against Defendants The Veritas Healthcare Solutions LLC ("Veritas") and its owners and managers Chiranjeev Jolly, Simarjeev Jolly, and Simrat Jolly (together, "Defendants").  Plaintiff, a citizen and resident of India, alleges that Defendants induced him to come to the United States from the United Kingdom, and obtained an H-1B visa for him,[1] while promising him employment as a clinical research assistant.  Plaintiff claims that this employment never materialized, and that he was paid less than promised, for a shorter amount of time than promised, to perform different work than promised.  Plaintiff brings claims for "Trafficking, Extortion, Blackmail, Involuntary Servitude, Breach of Contract, Fraud, Unpaid wages, Mental

---

[1]    Among other things, the Immigration and Nationality Act (the "INA") authorizes the issuance of H-1B visas to aliens who come "temporarily to the United States to perform services … in a specialty occupation."  8 U.S.C. § 1101(a)(15)(H)(i)(b).

Torture, Retaliation to whistle blowing, Harassment and Conspiracy," as well as violations of "Civil, Human, Federal Rights and International treat[y] rights." (Compl. (Dkt. #2) 2-3).  Defendants previously moved to stay the instant litigation on the basis that the heart of Plaintiff's claims — that Defendants underpaid him during the period of his expected employment at Veritas in violation of the INA — was currently pending in a proceeding before the Department of Labor (the "DOL").[2]  The Court instead dismissed without prejudice Plaintiff's wage, retaliation, and INA fraud claims for failure to exhaust his administrative remedies, and denied Defendants' motion for a stay with respect to the remaining claims.  *Walia* v. *Veritas Healthcare Solutions L.L.C.* ("*Walia I*"), No. 13 Civ. 6935 (KPF), 2014 WL 7330440 (S.D.N.Y. Dec. 23, 2014).  Defendants now move to dismiss Plaintiff's remaining claims.  For the reasons set forth in this Opinion, Defendants' motion is granted in part and denied in part.

## BACKGROUND[3]

### A.    Factual Background

Plaintiff is a citizen and resident of India who holds a bachelor's degree in pharmacy and a master's degree in pharmaceutical science.  (Compl. 48, 49).

---

[2]    By letter dated March 5, 2015, Defendants informed the Court that on February 27, 2015, the DOL's Administrative Review Board affirmed the Office of Administrative Law Judges' dismissal of Plaintiff's complaint against Veritas.  (Dkt. #36).  Plaintiff has not moved to replead the dismissed claims.

[3]    The facts set forth herein are drawn from the Complaint and the exhibits thereto, as well as the exhibits to the parties' briefs where fairly incorporated by reference into the Complaint.  *See Rothman* v. *Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (stating that a court resolving a motion to dismiss may consider the facts alleged in the complaint, together with "any statements or documents incorporated in it by reference, as well as ... documents that the plaintiffs either possessed or knew about and upon which they

In 2011 he was working as a pharmacy dispenser at Northfield Pharmacy in London.  (*Id.* at 3, 50).  On June 13, 2011, Plaintiff was offered employment as a Clinical Research Associate for Veritas, which offer he accepted the same day. (Karcioglu Decl. Ex. A).  The offer letter detailed the responsibilities of this position, which broadly covered "managing the screening and recruitments of clinical team."  (*Id.*).

The offer letter made clear that the position was at-will, and that Veritas reserved the right to terminate Plaintiff's employment at any time.  (Karcioglu Decl. Ex. A).  The offer letter further represented that Plaintiff's salary would be between $40,000 and $50,000, and that he would be employed pursuant to an H-1B visa.  (*Id.*).  Defendants subsequently indicated in their H-1B visa application paperwork that they intended to employ Plaintiff full-time as a "Clinical/Medical Research Associate" at an annual wage of $50,856 between October 1, 2011, and September 30, 2014.  (Compl. 26-30).

When Plaintiff arrived in New York in October 2011,[4] he found "that there was no clinic/hospital setting or equipments to conduct clinical trials or research.  The company was [a] fraud."  (Compl. 3).  In effect, Plaintiff alleges that Veritas was in the business of fraudulently selling H-1B visas, and

---

relied in bringing the suit" (internal citations omitted)).  Citations to the Complaint include the page-numbering convention provided by this Court's electronic case filing (or "ECF") system.  For convenience, the parties' memoranda of law will be referred to as "Def. Br." (Dkt. #32), "Pl. Opp." (Dkt. #37), and "Def. Reply" (Dkt. #41).

[4]     Defendants seek to introduce Plaintiff's timesheets to demonstrate that he arrived well after his intended start date.  (Def. Br. 3 (citing Karcioglu Decl. Ex. B)).  This is one of a number of Defendants' factual assertions that the Court is unable to consider on a motion to dismiss.

conducted no medical research of any type. (*Id.* at 3-6). Rather, Defendants forced Plaintiff and other employees to sell H-1B visas, threatening to fire Plaintiff, revoke his visa, and assault or kill him and his family in India if he refused or revealed their operations. (*Id.* at 3-5). Plaintiff alleges that he was not paid any wages during his brief employment. (*Id.* at 4, 6). Plaintiff further alleges that "[t]he three main accused who were running this fraud company and doing illegal activitie[s] are the three family members — Chinranjeev Jolly (Owner) Simarjeev Jolly (Manager) Simrat jeev [sic] Jolly (Employee, Brother of Manager)." (*Id.* at 7).

Plaintiff does not indicate how his employment came to an end, but states that he emailed a complaint to Defendants on November 8, 2011, and alleges that it was only after that complaint that he received two checks that he cashed on November 9, 2011, totaling $2,802.52. (Compl. 4, 34, 37-38). Plaintiff also details a not-insubstantial list of complaints to various administrative bodies, which the Court discusses later in this Opinion as relevant. (*Id.* at 4-5).

## B.    Procedural Background

Plaintiff filed suit on September 30, 2013. (Dkt. #1-2). In the Complaint, Plaintiff alleges "Trafficking, Extortion, Blackmail, Involuntary Servitude, Breach of Contract, Fraud, Unpaid wages, Mental Torture, Retaliation to whistle blowing, Harassment and Conspiracy," as well as violations of "Civil,

Human, Federal Rights and International treat[y] rights." (Compl. 2-3).[5]
Plaintiff does not identify in the Complaint precisely what federal rights of his
were infringed, but in his brief in opposition to the prior motion to stay he
alleged violations of 18 U.S.C. §§ 1581, 1584, 1589, 1590, 1591, and 1592
(criminal statutes dealing respectively with peonage, sale into involuntary
servitude, forced labor, human trafficking, sex trafficking, and unlawful
conduct with respect to certain documents in furtherance of the former).  (Dkt.
#25 at 7).  Given the absence of allegations concerning sex work, indebtedness,
or any unlawful conduct with respect to travel or identification documents, his
allegations of "trafficking" and "involuntary servitude" are best interpreted as
raising claims under 18 U.S.C. §§ 1584, 1589, and 1590.[6]  As noted, Plaintiff's
claims for unpaid wages, retaliation, and fraud under the INA were previously
dismissed for failure to exhaust his administrative remedies before the DOL.
*Walia I*, 2014 WL 7330440.

The Court additionally dismisses with prejudice Plaintiff's claims for
extortion and blackmail; such claims are "patently frivolous as extortion is a
criminal offense, and may not be pled as a separate cause of action in a civil
case."  *Naples* v. *Stefanelli*, 972 F. Supp. 2d 373, 401 (E.D.N.Y. 2013) (citing

---

[5]     Plaintiff also alleges "[n]egligence, misconduct, [and] intentional misconduct by
Employees of [the Wage and Hour Division and the Office of Administrative Law Judges
of the DOL, as well as the] DOL and FBI," though he does not seek to name the United
States or any of its employees or agencies as parties.  (Compl. 3).

[6]     "Federal courts have held that the Thirteenth Amendment does not give rise to an
independent cause of action against private parties; plaintiffs must instead base such
claims on one of the statutes implementing the Thirteenth Amendment[.]"  *Del Elmer;
Zachay* v. *Metzger*, 967 F. Supp. 398, 402 (S.D. Cal. 1997) (collecting cases).

N.Y. PENAL LAW § 155.05(2)(e); *Crandall* v. *Bernard, Overton & Russell*, 133 A.D.2d 878, 879 (3d Dep't 1987)); *see also Kearney* v. *Kozloski*, No. 14 Civ. 1446 (GLS)(DEP), 2015 WL 500477, at *4 & n.6 (N.D.N.Y. Feb. 3, 2015) (dismissing a claim for extortion by a *pro se* plaintiff without granting leave to amend, on the grounds of futility).  Plaintiff's claim for "harassment," meanwhile, states merely, "I was harassed by the firm and its management." (Compl. 6).  Such explanation, in addition to failing to explain the statutory or common-law basis of the claim, is unmistakably within the category of "conclusory allegations or legal conclusions masquerading as factual conclusions," and accordingly is not entitled to credence on a motion to dismiss.  *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks and alteration omitted).

The Court, construing Plaintiff's Complaint generously due to his *pro se* status, thus interprets Plaintiff as alleging surviving claims of involuntary servitude and forced labor under 18 U.S.C. §§ 1584 and 1589; human trafficking under 18 U.S.C. § 1590;[7] breach of contract; common-law fraud; intentional infliction of emotional distress;[8] and conspiracy to commit the

---

[7]  Civil liability for these criminal statutes was created by the Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, § 4(a)(4), 117 Stat. 2875, 2877 (codified at 18 U.S.C. § 1595).  *See Velez* v. *Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012).  Although Plaintiff "did not raise claims under the TVPRA in [his] amended complaint, 'the failure in a complaint to cite a statute, or cite the correct one, in no way affects the merits of a claim, because factual allegations alone are what matters.'"  *Id.* (quoting *Consol. Edison Co. of N.Y., Inc.* v. *UGI Utils., Inc.*, 423 F.3d 90, 104 (2d Cir. 2005)).

[8]  The latter claim is the Court's most generous construction of Plaintiff's claims of "mental torture."

aforementioned acts.[9]  The Court now considers the extent to which these claims state a claim under Rule 12(b)(6) or, where applicable, Rule 9(b).

## DISCUSSION

### A.    Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  When considering such a motion, a court should "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).

A plaintiff will survive a motion to dismiss if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).  The Court is not, however, bound to accept "conclusory allegations or legal

---

[9]      The Court notes that "there is no independent tort in New York for civil conspiracy." *Niagara Mohawk Power Corp.* v. *Testone*, 272 A.D.2d 910 (4th Dep't 2000) (citing *Baker* v. *Vanderbilt Co.*, 260 A.D.2d 750, 752-53 (3d Dep't 1999); *Danahy* v. *Meese*, 84 A.D.2d 670, 672 (4th Dep't 1981)).  The Court therefore construes Plaintiff's claim of "conspiracy" as conspiracy to commit the alleged primary torts, and analyzes it accordingly.

conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation and internal quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson,* 89 F.3d 75, 79 (2d Cir. 1996)); *accord McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks omitted).

**B.    Analysis**

    **1.    The Court Declines to Dismiss Plaintiff's Claims Under 18 U.S.C. §§ 1584, 1589, and 1590**

18 U.S.C. § 1584 makes liable "[w]hoever knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held."  The Second Circuit has rejected the argument that would define "involuntary servitude" as "limited to chattel slavery-like conditions."  *McGarry* v. *Pallito,* 687 F.3d 505, 510 (2d Cir. 2012).  Rather, Section 1584 is violated by the creation of "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."  *Id.* at 511 (quoting *United States* v. *Kozminski,* 487 U.S. 931, 952 (1988)).  In this regard, courts have endorsed Judge Friendly's distinction between labor compelled through threat of physical coercion, and labor compelled merely by threat of exceedingly negative consequences, such as deportation:

> This seems to us a line that is intelligible and consistent with the great purpose of the 13th Amendment; to go beyond it would be inconsistent with the language and the history, both pointing to the conclusion that "involuntary servitude" was considered to be something "akin to African slavery," although without some of the latter's incidents.  While a credible threat of deportation may come close to the line, it still leaves the employee with a choice, and we do not see how we could fairly bring it within § 1584 without encompassing other types of threat … whose inclusion would make the statute an easy tool for blackmail and other serious abuse.

*United States* v. *Shackney*, 333 F.2d 475, 486-87 (2d Cir. 1964) (quoting *Butler*

v. *Perry*, 240 U.S. 328, 332 (1916)).

Plaintiff alleges that his manager — Simarjeev Jolly — forced him to sell

H-1B visas and threatened to withhold his wages and terminate Plaintiff's own

H-1B visa.  (Compl. 3).  Such threats do not rise to the level of violating Section

1584.  Plaintiff goes on to allege, however, that he was "threatened," "mental[ly]

tortured," and "stalked and under constant threat of [his] life."  (*Id.* at 4).[10]

While these allegations toe the line of being sufficiently "fanciful" or "fantastic"

to dismiss, *Gallop* v. *Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton*

v. *Hernandez*, 504 U.S. 25, 32-33 (1992)), they do not cross that line.[11]

Defendants do not argue that the Complaint fails to state such a claim; rather,

they point to proffered contradictory facts that undercut the plausibility of

Plaintiff's allegations.  (Def. Br. 14-15).  The Court has its doubts about the

---

[10]   The Complaint is less than perfectly clear as to whether these alleged threats to Plaintiff were in response to the possibility of his not selling H-1B visas, or the possibility of his revealing the true nature of Veritas: the Complaint goes on to allege: "They threatened me that they would beat me up and my family [in] India and they would kill me and my family [i]f I tell anyone what they do in the company."  (Compl. 4).  Yet, reading Plaintiff's Complaint generously, the Court interprets this as stating a claim that he was forced to work under threat of death.

[11]   Defendants urge the Court to view Plaintiff's Complaint "in context" (Def. Br. 16 (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007))), and therefore cast a skeptical eye at Plaintiff's claims in light of his prolific and often spurious litigation.  Yet the Supreme Court in *Twombly* instructed courts contemplating a motion to dismiss to view the *allegations* in their proper factual context, not the litigants.  *See* 550 U.S. at 557. Courts are not permitted to use their own experience with a litigant to determine the credibility of his pleadings.  *Cf. Pham* v. *United States*, 317 F.3d 178, 186 n.2 (2d Cir. 2003) (Sotomayor, J., concurring) ("The resolution of such credibility determinations against a petitioner based solely on the district court's previous interactions with the petitioner and conclusion that he is once more 'crying wolf,' rather than on a full evidentiary record concerning material issues, would be an abuse of discretion.  Indeed, even the fabled 'boy who cried wolf' did, eventually, see an actual wolf.").

credibility of such serious allegations, but a motion to dismiss is not the proper vehicle to test a plaintiff's sincerity.

Plaintiff's claims of forced labor survives as well.  Congress created 18 U.S.C. § 1589 specifically to broaden victims' protection beyond the slavery-like conditions prohibited by Section 1854 as interpreted by the *Kozminski* Court. *See Javier* v. *Beck*, No. 13 Civ. 2926 (WHP), 2014 WL 3058456, at *6 (S.D.N.Y. July 3, 2014) (discussing the legislative history of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464).  Forced labor, unlike involuntary servitude, thus encompasses labor procured by the threat of deportation.  *See* 18 U.S.C. § 1589(a)(3) (prohibiting the obtaining of "the labor or services of a person … by means of the abuse or threatened abuse of law or legal process"); *Kiwanuka* v. *Bakilana*, 844 F. Supp. 2d 107, 115 (D.D.C. 2012) ("[M]any courts have determined that threats of deportation constitute a condition of servitude induced through abuse of the legal process." (collecting cases)).  Defendants' alleged threat of revocation of Plaintiff's H-1B visa — in addition to the alleged threats that sufficed to state a claim for involuntary servitude — is therefore sufficient to state a claim under 18 U.S.C. § 1589.  Of course, courts "must distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences," *Headley* v. *Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012) (internal quotation marks omitted), but Plaintiff has alleged that the work he was made to perform transcended the satisfaction of his legitimate job duties

11

(*see* Compl. 3), which may have been necessary to maintain his eligibility for an H-1B visa.

Plaintiff has also alleged that Veritas, run by the individual Defendants, recruited him to come to the United States, where he was subjected to forced labor and involuntary servitude.  Accordingly, because Plaintiff's claims of forced labor and involuntary servitude survive the motion to dismiss, so too do his claims under 18 U.S.C. § 1590(a), which makes liable "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter."

### 2.    The Court Dismisses Plaintiff's Claims for Breach of Contract With Prejudice

Plaintiff also claims that he signed a contract to a fixed three-year term at a salary of $50,000 per year.  (Compl. 6).  Defendants have offered the contract as Exhibit A to the Karcioglu Declaration.  In the analytically similar context of a prospectus in a securities fraud action, the Second Circuit has explained that

> when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.

*Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  Courts have applied this principle to incorporate by reference the contract forming the basis of a breach of contract claim.  *See, e.g.*, *Berman* v. *Sugo LLC*, 580 F. Supp. 2d 191, 201 (S.D.N.Y. 2008); *Spencer Trask Software & Info. Servs. LLC*

12

v. *RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 438 n.2 (S.D.N.Y. 2003).  Here, Plaintiff relies upon the offer letter for his breach of contract claim, and paraphrases certain portions of it (albeit often in misinterpreted fashion), thus indicating his awareness of and reliance upon its terms in crafting his Complaint.  (*See* Compl. 6).

The contract makes abundantly clear that it is for at-will employment. (*See* Karcioglu Decl. Ex. A ("The Veritas healthcare Solutions LLC reserves the right to terminate the employment relationship at any time, with or without reason.")).  While the contract elsewhere states that "[t]he employment shall be according to the duration approved by Labor (LCA) and Immigration Department (USCIS)," and that "H1B usually is for a term of three years" (*id.*), such language is clearly meant to signify the bureaucratic restrictions on the potential outer bounds of the employment relationship, and cannot overcome the unambiguous language rendering the contract at-will.  "New York law is clear that absent 'a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.'"  *Smalley* v. *Dreyfus Corp.*, 10 N.Y.3d 55, 58 (2008) (quoting *Murphy* v. *Am. Home Prods. Corp.*, 58 N.Y.2d 293, 305 (1983)).  Accordingly, any claim arising out of the termination of Plaintiff's employment is meritless, whether that claim putatively sounds in contract or in tort:

> In that the length of employment is not a material term
> of at-will employment, a party cannot be injured merely
> by the termination of the contract — neither party can

13

> be said to have reasonably relied upon the other's promise not to terminate the contract. Absent injury independent of termination, plaintiffs cannot recover damages for what is at bottom an alleged breach of contract in the guise of a tort.

*Id.* at 59. Finally, any claim that Plaintiff was not paid the wages due under the contract during the period of his employment has been dismissed pursuant to *Walia I*, 2014 WL 7330440, at *3.

### 3. The Court Dismisses Plaintiff's Fraud Claim Without Prejudice

To state a claim for common-law fraud under New York law, a plaintiff must allege facts showing: "[i] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [ii] made for the purpose of inducing the other party to rely upon it, [iii] justifiable reliance of the other party on the misrepresentation or material omission, and [iv] injury." *Premium Mortg. Corp.* v. *Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co.* v. *Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).

Of course, "[i]n a federal [ ] action, such a claim must be pleaded with particularity" pursuant to Rule 9(b). *Premium Mortg. Corp.*, 583 F.3d at 108. Specifically, "the [claim] must: [i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent." *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks and citations omitted). Additionally, to satisfy Rule 9(b), a claim must "allege facts that give rise to a strong inference of fraudulent intent." *Berman* v. *Morgan Keenan & Co.*, 455 F. App'x 92, 95 (2d Cir. 2012)

14

(summary order) (internal quotation marks omitted) (quoting *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).  "The requisite 'strong inference' of fraud may be established either [i] by alleging facts to show that defendants had both motive and opportunity to commit fraud, or [ii] by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290-91.  The particularity requirement of Rule 9(b) "serves to 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Rombach* v. *Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting *O'Brien* v. *Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).  "While the pleadings of a *pro se* plaintiff must be construed liberally, a *pro se* complaint must still meet the particularity requirements of Rule 9(b)." *Phillips* v. *Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 241 (S.D.N.Y. 2013) (citing *Hoffenberg* v. *Hoffman & Pollok,* 248 F. Supp. 2d 303, 310-11 (S.D.N.Y. 2003)).

Importantly, where a fraud claim "is premised upon an alleged breach of contractual duties, and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie." *Cont'l Petroleum Corp.* v. *Corp. Funding Partners, LLC*, No. 11 Civ. 7801 (PAE), 2012 WL 1231775, at *10 (S.D.N.Y. Apr. 12, 2012) (internal quotation marks omitted) (quoting *McKernin* v. *Fanny Farmer Candy Shops, Inc.*, 574 N.Y.S.2d 58, 59 (2d Dep't 1991)).  Therefore, to maintain a claim for fraudulent inducement that

does not merge with a breach of contract claim, Plaintiff must "(i) demonstrate a legal duty separate from the duty to perform under the contract … ; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract … ; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages[.]" *Bridgestone/Firestone, Inc.* v. *Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).

Plaintiff appears to proceed on the second prong of *Bridgestone*, arguing that Defendants' description of the job and the nature of Veritas were fraudulent, and that such misrepresentations were collateral or extraneous to the contract itself. The Second Circuit has distinguished between fraud claims arising out of the *termination* of an employment-at-will contract and those arising out of the *acceptance* of such a contract. In *Stewart* v. *Jackson & Nash*, 976 F.2d 86 (2d Cir. 1992), the Court considered the fraud claim of an environmental law attorney who stated that she was misled into quitting her existing position and accepting an offer at a firm by their misrepresentations regarding the extent of the firm's environmental law practice; the plaintiff found herself largely unable to work on environmental law, with attendant damage to her career prospects. *Id.* at 87. The Court distinguished between that case, in which the damages arose during and before the plaintiff's employment, from *Murphy*, 58 N.Y.2d 293, in which the plaintiff's damages arose from his termination: "Although *Murphy* precludes an award of damages for injuries caused by her termination, it does not prevent her from recovering for injuries

16

that resulted from her reliance on the defendants' false statements." *Stewart*, 976 F.2d at 88.

There is some tension between federal and state cases analyzing fraud claims stemming from alleged inducement into a contract. Federal cases have, following *Stewart*, found such claims to be distinct from impermissible breach of contract claims and sufficient to state a claim for fraudulent inducement. *See 101 McMurray, LLC* v. *Porter*, No. 10 Civ. 9037 (CS), 2012 WL 997001, at *10 n.10 (S.D.N.Y. Mar. 26, 2012) (collecting cases). New York state courts, on the other hand, have stated that

> [w]here ... "a plaintiff is offered only at-will employment, he or she will generally be unable to establish reasonable reliance on a prospective employer's representations," which is an element necessary to the recovery of damages under a theory of fraudulent inducement. The at-will employment doctrine thus bars a cause of action sounding in fraudulent inducement, even where the circumstances pertain to a plaintiff's acceptance of an offer of a position rather than his or her termination.

*Guido* v. *Orange Reg'l Med. Ctr.*, 102 A.D.3d 828, 831 (2d Dep't 2013) (quoting *Epifani* v. *Johnson*, 65 A.D.3d 224, 230 (2d Dep't 2009) (internal citations omitted). The New York Court of Appeals has remained agnostic on the validity of *Stewart*'s acceptance/termination distinction. *See Smalley*, 10 N.Y.3d at 59. Accordingly, the Court will follow the Second Circuit's guidance and accept that a valid fraud claim can arise out of misrepresentations leading to the acceptance of an at-will employment contract.

Even accepting this conclusion, the Court cannot find that Plaintiff has pleaded his fraud claim with the particularity required by Fed. R. Civ. P. 9(b).

17

The Complaint, in elaborating Plaintiff's fraud claim, states merely that he was hired to conduct clinical trials, but that Veritas is not an approved clinical research organization, and instead is in the business of selling H-1B visas "by duping people." (Compl. 5). This portion of the Complaint fails to identify with particularity what false statement forms the basis of his fraud allegation, alleging neither a specific statement to Plaintiff[12] that the company was a clinical research organization nor a specific statement to Plaintiff that he would be performing clinical research. To the extent that Plaintiff is referring to the offer letter, it is unclear precisely what portion of that letter is misleading and how; while it states that Plaintiff would be hired as a "Clinical Research Associate," it also states that Veritas would be seeking his "assistance in managing the screening and recruitments of clinical team," as well as a number of specific responsibilities. (Karcioglu Decl. Ex. A). And even taking into account the solicitude due Plaintiff as a *pro se* litigant, it is not possible for the Court to determine what statement forms the basis of his fraud claim, whether within the offer letter or external to it.

Plaintiff states elsewhere in his Complaint that "[t]he firm claimed that it is a 'Clinical Research Organization' in H1B petition to USCIS, DJS and LCA to DOL filed by them," and that the "LCA (Labor Condition Application) and contract were signed by ChinranJeev [sic] Jolly (owner) and was sent to me via

---

[12]   Plaintiff does allege that false statements regarding the nature of the company were provided to the United States Government in connection with the H-1B visa application, but does not suggest any reliance by him on the statements contained within that application. (*See* Compl. 3).

email by [Manager] Simarjeev Jolly." (Compl. 3). Such a statement is far more particular as to the false statements, but fails to allege or suggest that such statements were made for the purpose of inducing Plaintiff to rely upon them, as required for a fraud claim. *See U.S. Capital Partners, LLC* v. *Stanwich Capital Advisors, LLC*, No. 14 Civ. 4138 (KPF), 2015 WL 4388421, at *3 (S.D.N.Y. July 17, 2015). Rather, the statements appear directed at the United States Government.

Finally, Plaintiff states in his opposition to the motion to dismiss that "[t]he company and its owner lied/provided false statement to" [him]. (Pl. Opp. 13). Such a statement is far too conclusory and general to meet the requirements of *Twombly* and *Iqbal*, let alone Rule 9(b). Accordingly, the Court dismisses the fraud claim, but will allow Plaintiff an opportunity to amend his Complaint to state his fraud claim with the necessary particularity if he so chooses.

### 4. The Court Dismisses Plaintiff's Claim for Intentional Infliction of Emotional Distress Without Prejudice

The tort of intentional infliction of emotional distress ("IIED") "provides a remedy for the damages that arise out of a defendant engaging in 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.'" *Turley* v. *ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014) (quoting *Freihofer* v. *Hearst Corp.*, 65 N.Y.2d 135, 143 (1985)). "To prevail on such a claim, a plaintiff must establish that there was 'extreme and outrageous conduct,' that the conduct was undertaken with 'intent to cause, or disregard of a substantial probability

19

of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." *Id.* at 157-58 (quoting *Howell* v. *N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)).

As noted *supra*, Plaintiff does not expressly invoke the IIED tort; rather, it is the Court's best interpretation of his claim of "mental torture." Plaintiff elaborates that this mental torture consisted of being "threatened over and over again by the manager" (Compl. 5), and specifically being threatened with the denial of wages and termination of his H-1B visa; additionally, the manager (Simarjeev Jolly) "wouldn't care [i]f [Plaintiff] would go begging on the streets," and "used to shout, scream, yell, [and] bang his fists on the table" (*id.* at 3). Such allegations — regardless of whether the threats made "over and over again" include the death threats alleged elsewhere[13] — certainly satisfy the first and second elements of IIED. *See, e.g.*, *Guobadia* v. *Irowa*, — F. Supp. 3d —, No. 12 Civ. 4042 (ADS)(ARL), 2015 WL 2129640, at *14 (E.D.N.Y. May 7, 2015).

Plaintiff, however, has nowhere in his Complaint alleged that he suffered emotional distress as a result of these alleged actions, or sought damages for mental or emotional anguish. Such a lapse might ordinarily be overlooked on account of Plaintiff's *pro se* status and the objectively distressing behavior that

---

[13] The New York Court of Appeals has cautioned that "a claim for IIED may not be sustainable 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" *Turley* v. *ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir. 2014) (quoting *Fischer* v. *Maloney*, 43 N.Y.2d 553, 557-58 (1978)). Yet New York courts have applied this principle to IIED claims that are duplicative of causes of action created by antidiscrimination statutes, *see id.* at 160 (collecting cases), rather than suggesting that an IIED claim will not lie where the alleged conduct overlaps with a claim of human trafficking, forced labor, and indentured servitude. The Court need not decide whether IIED cannot coincide with such statutory claims, as it finds that Plaintiff has failed to allege that he suffered severe emotional distress.

he alleges.  Yet other elements of the Complaint undercut the idea that Plaintiff was emotionally affected, let alone severely so, by these alleged threats. According to Plaintiff, he began filing internal and external complaints mere weeks after Defendants threatened to kill him and his family if he revealed Veritas' nature to anyone outside the company.  (Compl. 3-4 (alleging threats in October 2011, and complaints to the DOL, the New York Attorney General, Simarjeev Jolly, and an attorney in November 2011)).[14]  Given Plaintiff's apparent mental fortitude, the Court will not find on his behalf the subjective severe emotional distress that he fails to allege.  Accordingly, the Court dismisses the IIED claim, but will allow Plaintiff an opportunity to amend his Complaint to identify what, if any, emotional distress he suffered if he so chooses.

**5.    The Court Declines to Dismiss Plaintiff's Conspiracy Claim**

In order "[t]o establish a prima facie case for conspiracy, a plaintiff must allege the primary tort and four additional elements: '(a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the corrupt agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury.'" *Amusement Indus., Inc.* v. *Stern*, 693 F. Supp. 2d 327, 355 (S.D.N.Y. 2010) (quoting *Chrysler Capital Corp.* v. *Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991)).  Courts

---

[14]    The fact that Plaintiff did not continue to work for Defendants for more than a short period is, of course, troubling for his involuntary servitude and forced labor claims as well.  However, Plaintiff does allege that he performed some work following Simarjeev Jolly's threats, whereas he nowhere alleges emotional distress as a result of these threats.

have rejected the "argument that the elements of the civil conspiracy must comply with the particularity requirements of Fed. R. Civ. P. 9(b)." *Id.* at 355 n.15 (collecting cases).  Moreover, when considering the sufficiency of pleadings of conspiracy, "great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of pleading." *Maersk, Inc.* v. *Neewra, Inc.*, 554 F. Supp. 2d 424, 458 (S.D.N.Y. 2008).

As detailed above, Plaintiff has adequately alleged claims of involuntary servitude, forced labor, and trafficking.[15]  He states that he was sent by Simarjeev Jolly a contract to work for Veritas, signed by owner Chinrajeev Jolly.  (Compl. 3).  While the specific threats that supplied the necessary element for Plaintiff's claims came only from Simarjeev Jolly (*id.* at 3-6), Plaintiff states that each of the individual defendants was involved in "running this fraud company and doing illegal activitie[s]" (*id.* at 7).  Elsewhere he alleges that "[t]he Manager, Owner and other traffickers [willfully] provided false

---

[15]   Whether such claims, which are based upon federal statute rather than state common law, can serve as the predicate "primary torts" is a question that has not attracted a significant amount of scrutiny.  One case in New York's Second Department has suggested that a statutory claim cannot serve as the predicate tort upon which to hang a conspiracy claim.  *See Monsanto* v. *Elec. Data Sys. Corp.*, 141 A.D.2d 514, 515 (2d Dep't 1988).  *Monsanto* relied upon *Murphy* v. *Am. Home Prods. Corp.*, 58 N.Y.2d 293 (1983), but appears to have misunderstood *Murphy*, which held merely that statutory causes of action should be governed by the statute of limitations applicable to statutory causes of action rather than tort claims.  *See id.* at 307.

The Court agrees with those federal courts that have described 18 U.S.C. § 1595, which established civil liability for 18 U.S.C. §§ 1584, 1589, and 1590, as "creat[ing] a cause of action that sounds in tort."  *Ditullio* v. *Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011); *accord Carazani* v. *Zegarra*, 972 F. Supp. 2d 1, 26 (D.D.C. 2013).  Such courts have treated claims under these provisions as torts in making available punitive damages; it is thus unclear why New York courts would treat them any differently for the purposes of civil conspiracy.

information to commit trafficking and run other illegal activities." (*Id.* at 12).
Plaintiff confesses in his brief in opposition to the instant motion some
uncertainty as to Chinrajeev Jolly's involvement (*see* Pl. Opp. 5-6), but such
uncertainty is to be expected prior to discovery, given that "the nature of
conspiracies often makes it impossible to provide details at the pleading stage."
*In re Harvard Knitwear, Inc.*, 153 B.R. 617, 628 (E.D.N.Y. 1993). Plaintiff has
not perfectly set out the elements of conspiracy, but he has alleged a concerted
plan to recruit him and obtain his labor in violation of 18 U.S.C. §§ 1584,
1589, and 1590, as well as numerous overt acts in furtherance of that
conspiracy, including the filing of false paperwork on Plaintiff's behalf. That is
enough to state a claim for conspiracy in light of Plaintiff's *pro se* status and
limited access to the evidence that would substantiate such a claim.

### 6. The Court Declines to Dismiss the Remaining Claims Against Simrat Jolly

Defendants ask separately that the claims against Simrat Jolly be
dismissed, stating that "the sole basis for this Complaint being brought against
Mr. Simratjeev Jolly [is] the clearly inaccurate and false statement that he is a
brother of and an employee of Veritas." (Def. Br. 18). Defendants provide as
support for this argument Simrat Jolly's declaration, in which he states that he
is not in fact related to the other individual Defendants (Jolly being a common
surname in northern India), and was merely a contractor providing web and
technology support to Veritas around the time that Plaintiff was hired. (*Id.* at
4-5 & n.1). Simrat Jolly may indeed be an innocent bystander to Plaintiff's
claims, but the Court cannot dismiss him from the action based solely on his

declaration.  Because the Complaint alleges his participation in the events giving rise to the surviving claims, the motion to dismiss the claims against Simrat Jolly must be denied.

**CONCLUSION**

To make clear what is hinted at in this Opinion, the Court has concerns about substantial portions of the Complaint.  A number of the allegations border on the incredible, and are not helped by Plaintiff's efforts in opposing the instant motion to tie his former employers to the worldwide proliferation of terrorist activities.  (*See* Pl. Opp. 13; *see also id.* at 14 (asking the Court to commence a criminal prosecution of Defendants, which it cannot do)). However, particularly in light of the liberal construction afforded Plaintiff's allegations, many of his causes of action survive this motion.  Specifically, for the reasons set forth in this Opinion, the Court dismisses Plaintiff's claims for extortion, blackmail, harassment, and breach of contract with prejudice, and dismisses his claims for fraud and intentional infliction of emotional distress without prejudice to the filing of an amended complaint.  Plaintiff's claims of involuntary servitude, forced labor, trafficking, and conspiracy to do the same are not dismissed.  The parties are directed to arrange for a teleconference with the Court at **9:30 a.m. Eastern Daylight Time on August 25, 2015**, to discuss how to proceed with litigation, including scheduling the filing of an amended complaint, if sought by Plaintiff.

SO ORDERED.

Dated:      August 11, 2015
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge

*A copy of this Order was mailed by Chambers to:*

Parminder Singh Walia
2483 2nd Floor
Telehos (BSNL) Society, Sec-50
CHD., U.T 160047
India